# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMY JONES | CIVIL ACTION |
| VERSUS | No. 11-3140 |
| PRIDE INTERNATIONAL INC., ET AL | SECTION I |

## ORDER AND REASONS

Before the Court is a motion[1] for summary judgment filed by defendants, Pride International Inc., et al. Plaintiff, Amy Jones ("Jones"), has filed an opposition.[2] For the following reasons, the motion is **GRANTED**. Plaintiff's Jones Act, unseaworthiness, and Title VII gender discrimination claims are **DISMISSED WITH PREJUDICE**. Plaintiff's Title VII religious discrimination claim is **DISMISSED WITHOUT PREJUDICE.**

### *BACKGROUND*

Defendants hired Jones as a third engineer for the M/V DEEP WATER CLARION ("THE CLARION") in February of 2010.[3] Sea trials for THE CLARION were set to begin in July or August of 2010.[4] Jones avers that prior to the sea trials, she was advised that she was assigned to share berthing with three male employees.[5] She complained that this arrangement was "morally, ethically, and personally unacceptable."[6] Jones was ultimately assigned to share berthing with Craig Backstrom, a male second assistant engineer who would be working a 12-hour shift opposite Jones's

---

[1] R. Doc. No. 41.

[2] R. Doc. No. 43.

[3] R. Doc. No. 41-2, ¶¶ 1-2; R. Doc. No. 43 at 1.

[4] R. Doc. No. 41-4, ¶ 9; R. Doc. No. 43-1, p. 13.

[5] R. Doc. No. 43-1, ¶ 6.

[6] *Id.*

own 12-hour shift.[7] Jones also opposed this arrangement, suggesting that she could share housing aboard the vessel with other females, including other female workers.[8] According to Jones, a second engineer volunteered his private room to Jones, but management "ignored this offer to accommodate Plaintiff."[9] Defendants dispute whether any private room was available.[10] Deposition testimony from Chris Johnston, Pride's general manager of its North and South America Business Unit, Deep Water, explained that Jones could not be placed in a room other than that designated for the third engineers.

> In the event of emergencies, the third engineers have assigned emergency duties that they need to fulfill. . . . .[You] have to contact them; and you contact them by way of the telephone that's in their room. . . . [I]f they're not in that room –in other words, if they're moving from room to room in the accommodations, then it can create confusion in an emergency situation in not being able to reach and notify specific people that have specific duties.[11]

On July 27, 2010, Jones met with the rig manager, the technical coordinator, and the chief engineer, who confirmed that she would share a room with a male assistant engineer working an opposite shift and that she would be able to lock the room from the inside.[12] On August 12, 2010, Jones's employment with defendants ended. The parties dispute whether she resigned or was subject to a constructive discharge.[13]

---

[7]R. Doc. No. 41-4, ¶ 11; R. Doc. No. 43-1, ¶ 6; R. Doc. No. 41-2, ¶ 7. Defendants' evidence suggests Backstrom was a third engineer. *E.g.*, R. Doc. No. 41-4, ¶11. The parties do not address this difference in title or position, much less dispute it. Even assuming that "second assistant engineer" is not synonymous with "third engineer," the Court finds that such factual distinction is not material.

[8]R. Doc. No. 43-1, ¶ 8.

[9]*Id.* ¶ 9.

[10]R. Doc. No. 41-3, ¶ 2.

[11]R. Doc. 45-3, pp. 42-43.

[12]R. Doc. No. 43-1, ¶ 10.

[13]R. Doc. No.s 43, pp. 8-9 & n. 13; 43-2, ¶ 4.

Jones filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging the proposed sleeping arrangement constituted gender discrimination in violation of Title VII.[14] The EEOC issued a Notice of Right to Sue on October 28, 2011.[15] On December 22, 2011, Jones filed a complaint asserting defendants' actions violated the Jones Act, general maritime law, and Title VII.

## *STANDARD OF LAW*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine

---

[14]R. Doc. No. 41-2, ¶ 11.
[15]R. Doc. No. 41-5.

issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotation and citation omitted) (alteration in original).

## DISCUSSION

Defendants contend that they are entitled to summary judgment on the grounds that: (1) the Jones Act does not apply because Jones does not allege physical injuries; (2) the facts do not give rise to an unseaworthiness claim because Jones was not injured and she cannot demonstrate the vessel was unfit for its intended purpose; and (3) Title VII does not apply because THE CLARION was a foreign-flagged vessel and because Jones has not produced sufficient evidence to support her claim of gender discrimination. With respect to her claim for religious discrimination, defendants assert that she did not exhaust it with the EEOC and that she has failed to articulate a viable claim.

### I. Jones Act

The Jones Act provides: "A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. It extends to seamen the negligence cause of action afforded to railway employees by the Federal Employers' Liability Act ("FELA"). *Id.* Defendants argue that they are entitled to summary judgment because Jones has not alleged a physical injury and because Jones was never within the zone of danger required for liability from an emotional injury.[16] Jones responds that defendants'

---

[16] R. Doc. Nos. 41-3, p. 6; 45-2, p. 10.

actions caused her to suffer from post-traumatic stress disorder ("PTSD") and led to her wrongful termination.[17]

The Fifth Circuit has not specifically ruled "whether sexual harassment unaccompanied by battery can be actionable under the Jones Act." *Martinez v. Bally's Louisiana*, 244 F.3d 474, 478 (5th Cir. 2001). But it has ruled that, with respect to the Jones Act, a plaintiff who suffers an emotional injury must prove it has physical manifestations. *Martinez*, 244 F.3d at 478. Accordingly, "absent evidence of a physical manifestation of her emotional injuries, plaintiff cannot recover under the Jones Act for damages due to harassment on defendant's vessel." *Gardner v. Waterman Steamship Corp.*, No. 01–3224, 2002 WL 31115252, at *1 (E.D. La. Sept. 23, 2002).

In addition to requiring physical manifestations, "recovery under FELA for negligent infliction of emotional distress is limited to emotional injuries suffered while the employee is in the 'zone of danger.'" *Duet v. Crosby Tuggs*, No. 06-1825, 2008 WL 4657786, at *2 (E.D. La. Oct. 20, 2008) (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994)). An employee is in the 'zone of danger' when defendant's negligent conduct puts her at risk of "*immediate* physical harm . . . or physical impact." *Id.* at *4.

Defendants are entitled to summary judgment because the Jones Act claim suffers from two fatal defects. First, Jones has alleged she suffers from PTSD, but she has not identified any physical manifestations of her PTSD. Accordingly, the absence of any alleged physical manifestation is sufficient for summary judgment on the Jones Act claim.[18] Second, Jones has not alleged that defendants' negligent infliction of her emotional injury occurred while she was in the zone of

---

[17]R. Doc. 1, ¶¶ XIII, XIV

[18]Jones does not suggest that her PTSD diagnosis necessarily requires physically manifest symptoms. *See also* AMERICAN PSYCHIATRIC ASSOCIATION DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (Text Revision, 4th ed. 2000) (DSM-IV).

danger. No facts support the conclusion that Jones was ever at risk of physical harm or physical impact.

Of note, the Fifth Circuit has not ruled on whether the zone of danger test applies where a plaintiff alleges intentional infliction of emotional distress. *See Martinez*, 244 F.3d at 477 n.2; *see also Duet*, 2008 WL 4657786 (applying the zone of danger test to intentional infliction of emotional distress). Jones's complaint largely frames her Jones Act claim as one for negligence, so the question of whether the zone of danger test should apply appears irrelevant. To the extent Jones re-frames her Jones Act claim at the summary judgment stage as one for intentional infliction of emotional distress,[19] the Court finds that she has not presented evidence of extreme, outrageous, or otherwise unconscionable conduct. *Atchison, T. & S. F. R. Co. v. Buell*, 480 U.S. 557, 566 n.13 (1987); *Netto v. AMTRAK*, 863 F.2d 1210, 1214 & nn. 3-4 (5th Cir. 1989).

Defendants' motion for summary judgment as to the Jones act claim has merit, as Jones has not identified an emotional injury with physical manifestations, she has not met the zone of danger requirement for negligent infliction of emotional distress, and she has not identified extreme and outrageous conduct that would give rise to a claim for intentional infliction of emotional distress.

## II. UNSEAWORTHINESS

Jones contends that THE CLARION was not reasonably fit for its intended purpose because the room she would have occupied was not secure. Defendants had informed Jones that the room she would occupy could be locked from the inside such that only the vessel's Captain could unlock it from the outside.[20] Jones avers that Backstrom "advised Plaintiff that had she shared a room with him, she would not have been given complete secure privacy as provided by management since a

---

[19] R. Doc. No. 43, p. 10.
[20] R. Doc. No. 41-4, ¶ 11.

male Korean entered the room via use of a key in the middle of the night during sea trials."[21] Defendants contend this statement is inadmissible and, even if admitted, insufficient to establish a genuine issue of material fact. Jones characterizes this hearsay statement as an admission against interest.

The Court agrees that, even if admissible, this statement is insufficient to create a genuine issue of material fact as to whether THE CLARION was unseaworthy. As defendants highlight, Jones has not come forward with any evidence elaborating on the circumstances in which a male entered the room via use of a key. This isolated and vague allegation is insufficient to create a reasonable inference that THE CLARION was unseaworthy.

Jones also argues that crew members may render a vessel unseaworthy. But the fact that a male entered a cabin that Jones would have hypothetically used does not suggest "a wicked disposition, a propensity to evil conduct, a savage and vicious nature" that would make the ship "perilous." *Boudoin v. Lykes Bros. S.S. Co.*, 348 U.S. 336, 340 (1955); *Hasty v. Trans Atlas Boats, Inc.*, 389 F.3d 510, 513 (5th Cir. 2004) (quoting *id.*). Defendants' summary judgment motion with respect to the unseaworthiness claim has merit.

### III. TITLE VII

Jones brings a hostile working environment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Defendants assert that Title VII does not apply because THE CLARION is a foreign flagged vessel. In the alternative, they argue that she has failed to allege conditions sufficient to give rise to her gender discrimination claim. Jones responds that Title VII applies to a foreign flagged vessel but, moreover, THE CLARION was not a foreign flagged vessel

---

[21] R. Doc. 43-1, p. 2.

when defendants terminated Jones's employment.[22] Specifically, Jones offers deposition testimony that the vessel had no flag at the time she refused to share quarters on alternating shifts with a male employee.[23]

There is no controlling precedent with respect to whether Title VII applies to a foreign flagged vessel. "[A] clear statement of congressional intent is necessary before a general statutory requirement can interfere with matters that concern a foreign-flag vessel's internal affairs and operations, as contrasted with statutory requirements that concern the security and well-being of United States citizens or territory." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 125 (2005). The Court agrees with Jones[24] that there is a factual dispute as to whether THE CLARION was a flagged vessel at the time she suffered her alleged injury, but concludes that she has failed to provide evidence supporting her discrimination claim.

A *prima facie* hostile working environment claim requires: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 162-63 (5th Cir. 2007). This fourth element requires that the harassment be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quotation omitted).

While Jones plainly meets the first requirement by virtue of her gender, the Court questions whether the sleeping arrangements described in Jones's suit can be described as harassment, much

---

[22]R. Doc. No. 43, p. 4.

[23]*Id.* at p. 5.

[24]R. Doc. No. 43-2, ¶ 2.

less sexual harassment that would affect a term, condition, or privilege of employment. Hostile work environment claims are intended "to level the playing field for women who work by preventing others from impairing their ability to compete on an equal basis with men." *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995). Jones has not alleged any past harassment or any expectation of future harassment other than that which she argues is implicit in the sleeping arrangements. *Compare Fisher v. Town of Orange*, No. 10-30172, 2012 WL 639461, at *6 (D. Mass. Feb. 24, 2012) (Employer's actions could plausibly constitute actionable harassment "where the complaint alleges lewd pranks, hostile remarks, and refusals to provide plaintiff with adequate sleeping quarters [during 24-hour shifts] on account of her gender."). Defendants have presented unrebutted evidence that had Jones fallen ill during a work shift, she would be able to rest in the infirmary.[25] Accordingly, the Court need not consider the implications, if any, of a counter-factual wherein Jones was not afforded a private place to sleep. The Court finds that there is no genuine issue of material fact as to whether the alternating 12-hour shifts at issue created a hostile work environment.

Defendants correctly assert that Jones did not present her religious discrimination claim to the EEOC.[26] In her EEOC charge, Jones checked only the "sex" box with respect to the basis of the alleged discrimination and she did not reference any religious beliefs or discrimination. Read broadly, the EEOC charge would simply not trigger an investigation into religious discrimination. *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006). The Court finds Jones has not identified how her religious discrimination claim could "reasonably be expected to grow out of" the EEOC's investigation of her gender discrimination claim. *Id.* at 789. Moreover, the Court notes that, while

---

[25]R. Doc. No. 45-3, p. 40.

[26]R. Doc. No. 41-5.

Jones's complaint alleges that defendants' berthing assignment "could lead to death under the laws of certain countries,"[27] she has not offered any additional facts or case law in support of her religious discrimination claim and appears to be abandoning it at the summary judgment stage.

Defendants' summary judgment motion as to Jones's Title VII gender discrimination claim should be granted because she has failed to create a genuine issue of material fact as to her gender discrimination claim. Jones's Title VII religious discrimination claim must be dismissed as unexhausted.

## *CONCLUSION*

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**. Plaintiff's Jones Act, unseaworthiness, and Title VII gender discrimination claims are **DISMISSED WITH PREJUDICE**. Plaintiff's Title VII religious discrimination claim is **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, November 19, 2012.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[27]R. Doc. No. 1, ¶ XVI.